6759

## MATHESON v. SOUTHERN RY.

1. CARRIER—FREIGHT—SPECIAL DAMAGES.—An ordinary shipment of fertilizer with no notice to carrier at time of shipment of any special use to which it was to be put or of such scarcity as to prevent the purchase of more of the same kind, will not subject carrier to special damages.

2. IBID.—IBID.—NEGLIGENCE.—Notice after shipment of effects of further delay in delivery may render carrier liable for damages after that time by reason of negligence in not tracing and finding the goods. Here there was no such negligence.

3. WILFULNESS.—There was no evidence here of wilfulness, recklessness or indifference to the rights of plaintiff in transporting and tracing freight.

4. CARRIER—VENDOR AND VENDEE.—Where a vendor undertakes to deliver an article sold by him at a certain place no title vests in vendee until such delivery, and where vendor delivers to carrier, the carriage to that point is at risk of vendor, and title and right of action for loss remains in him. In this case the vendee having demanded and received of vendor the purchase money thereby rescinded the contract, and carrier having paid to vendor the purchase price before suit, all demands against carrier are satisfied.

5. IBID.—FREIGHT.—WHERE THE BILL OF LADING fixes the liability of the carrier for loss at value of goods at place of shipment no recovery can be had for market value at point of destination.

Before DANTZLER, J., Fairfield, February, 1907. Affirmed.

Action by A. W. Matheson against Southern Railway. From judgment for defendant, plaintiff appeals.

*Mr. T. M. Cathcart,* for appellant, cites: *Return of property only goes to mitigation of damages:* 10 John, 176; 5 Cow., 323; 11 How., 17; 1 Helton, 207; Moak's Van Sant-Wood's Pleadings, 458, 459; Wait's Actions, 220; 8 Cow., 324; 6 Bac. Abr., 678; 12 Mod., 212. *Special damages:* 76 S. C., 338. *There was evidence here to warrant sending case to jury:* 78 S. C., 249; 33 S. C., 427; 34 S. C., 311; 35 S. C., 493; 37 S. C., 377; 18 S. C., 115; 21 S. C., 599;

51 S. C., 296; 52 S. C., 323; 57 S. C., 228, 325; 58 S. C., 148; 60 S. C., 48, 67; 74 S. C., 377; 27 S. C., 549; 74 S. C., 102-306; 51 S. C., 536; 57 S. C., 325; 29 S. C., 285; 35 S. C., 475; 33 S. C., 427; 72 S. C., 244. *Fraud of agent is imputable to carrier:* 2 Harris on Dam. by Corp., 703, 709.

*Messrs. B. L. Abney* and *W. H. Townsend,* contra, cite: *Settlement by carrier for loss is bar to action:* Hutch. on Cor., Secs. 1306, 1318, 1319, 1320; 36 S. E., 309; 30 S. E., 555; 112 Mass., 524; 49 N.Y., 188; 13 Barb., 57; 26 Ala., 6 Col., 382. *No basis laid for special damages:..* 76 S. C., 239; 70 S. C., 16; 71 S. C., 82, 212; 75 S. C., 355. *Evidence as to profits on crop properly excluded:* 87 Ala., 727; 44 Me., 255; 23 N. C., 607; 26 Kan., 482; 57 Ark., 203; 29 Ala., 387.

February 22, 1908. The opinion of the Court was delivered by

MR. JUSTICE WOODS. In this action the plaintiff, A. W. Matheson, seeks to recover of the Southern Railway Company $1,995 for the loss of two tons of fertilizer, the position taken being that the facts warrant the recovery of both special and punitive damages in addition to the value of the goods lost. The Circuit Judge directed a verdict for the defendant. The inquiry then is, whether there was any evidence upon which a verdict for any amount in favor of the plaintiff could have been rendered.

These were the undisputed facts before the Court: The plaintiff in March, 1905, bought of Springs & Shannon, merchants at Camden, two tons of Pocomoke guano to be shipped to him at Ridgeway, paying them the purchase money, $32.36, in cash. Springs & Shannon immediately thereafter, on 24th March, 1905, bought two tons of fertilizer from Pocomoke Guano Company, which company, as directed by Springs & Shannon, delivered the guano to the defendant railway company consigned to the plaintiff at

Ridgeway, S. C. The guano company had no contract with the plaintiff and sent the bill of lading, which named the plaintiff, as consignee to Springs & Shannon. After shipment, the plaintiff inquired for the guano a number of times at defendant's Ridgeway freight office, and informed the defendant's local freight agent of his intention to use it on his crop, and of the necessity for him to have it in time. The agent promised to send a tracer for the guano, and the evidence of the officers of the railway company, that diligent effort was made to find and deliver the guano, was undisputed. The plaintiff testified he waited on the guano until he was convinced, if it came at all, it would be too late for the use he wished to make of it, and then demanded and received back from Springs & Shannon the purchase price. The plaintiff further testified he was unable to procure guano after it became manifest this fertilizer would not be delivered, and that the yield of his land was far less than it would have been if he had been able to use the guano.

After repayment to plaintiff, Springs & Shannon returned the bill of lading to the Pocomoke Guano Company, and received credit on their books for the price of the guano. Thereupon, the Pocomoke Guano Company demanded and received from the defendant railway company, $32.36, the value of the goods at Norfolk.

There is no foundation for special damages. The evidence discloses nothing more than an ordinary shipment of fertilizer with no notice to the carrier at the time it received the goods of any special use to which it was to be applied, or of such scarcity of fertilizer as to prevent the purchase of two tons of other guano by the plaintiff. *Traywick* v. *Ry. Co.,* 71 S. C., 82, 50 S. E., 541; *Wesner, etc., Co.* v. *Ry.,* 71 S. C., 211, 50 S. E., 786; *Guess* v. *Ry. Co.,* 73 S. C., 264, 53 S. E., 421; *Strange* v. *Ry. Co.,* 77 S. C., 182. In *McKerall* v. *R. R. Co.,* 76 S. C., 342, the following language from 6 Cyc., 450, is quoted with approval: "Subsequent notices, however, of the effect of the futher delay after the goods should have been deliv-

ered may render the carrier liable for damages accruing after that time by reason of negligence in not tracing and finding the goods." Assuming that there was notice given of special emergency after the shipment, there was not a particle of evidence of negligence in not tracing and finding the goods. On the contrary, there was undisputed evidence of diligent and prompt effort to find and deliver. The case as to special damages, therefore, entirely fails.

So far from there being evidence of reckless or willful disregard of plaintiff's rights or even indifference to them, all the testimony on the subject tended to show a loss by theft from the carrier or by some mistake which the defendant, after diligent effort, could not account for. To allow punitive damages under such conditions would not only be unjust, but would result either in bankruptcy to common carriers or such increase in freight rates as to impose an intolerable burden on the business of the country.

The remaining question was whether there was any evidence of actual damages recoverable by the plaintiff. The plaintiff, it is true, paid in advance for two tons of Pocomoke guano, but the sellers undertook to deliver it to him at Ridgeway; and until delivered at that place, ownership did not pass to the buyer, for the goods were still at the risk of the seller, loss, if any, falling on him. The general rule is that delivery to the carrier is delivery to the consignee, and on such delivery the title passes to the consignee; the goods being then at the consignee's risk, he has the right of action for their loss. But where the vendor undertakes to deliver at a certain place, the carriage of the goods to that place is at his risk, and the title and right of action for their loss remains in him. *Parker* v. *Jacobs,* 14 S. C., 116; Elliott on Railroads, Sec. 1692; Benjamin on Sales, Sec. 1040; Hale on Carriers, p. 547; 6 Cyc., 511; 24 Am. and Eng. Enc., 1050; *McNeal* v. *Braun* (N. J.), 26 Am. St. Rep., 441, and note; *Detroit, etc., R. R. Co.* v. *Mal-*

comson (Mich.), 115 Am. St. Rep., 390; *Neimeyer L. Co.*
v. *Burlington & M. R. R. Co.* (Neb.), 40 L. R. A., 535.
The remedy of the purchaser in such a case is against the
seller who has failed to perform the contract of sale.

But if the law were otherwise on this point, the action of
the plaintiff, in demanding and receiving from Springs &
Shannon the purchase money of the fertilizer, cannot be
viewed in any other light than a rescission of the sale, leaving
the fertilizer, wherever it might be, on their hands.   Even
if the title had ever passed from Springs & Shannon, as
between them and the plaintiff, by this rescission it went back
to them and with it, the right of action for the loss.   4
Elliott on Railroads, 1692; *Turney* v. *Wilson* (Tenn.), 27
Am. Dec., 516, and note; Hutchison on Carriers, Sec.
1319; *Railway Co.* v. *Com. Guano Co.* (Ga.), 30 S. E., 555.

In addition to this, the plaintiff having received back
from the seller the purchase price, $32.36, and the carrier
having refunded that sum to the seller in full settlement, the
rightful demands of all parties were met before this suit
was brought.   True, there was evidence that the fertilizer
was worth $1.50 per ton more at Ridgeway than plaintiff
had paid for it, and it was contended he was at least entitled
to recover this difference in market value.   But if there were
no other difficulties in the way of the recovery of this differ-
ence in value, the bill of lading fixes the liability of
the carrier for loss at the value of the goods at the
point of shipment, which in this case was Norfolk,
Va.   As a general rule, liability for the loss of goods by the
carrier is measured by the value at the place of destination.
*Wallingford* v. *R. R. Co.,* 26 S. C., 268, 2 S. E., 19; *Turner*
v. *R. R. Co.,* 75 S. C., 58; *McKerall* v. *R. R. Co.,* 76 S. C.,
342.   But a contract fixing the liability for loss at the value
at place of shipment is held to be reasonable and valid.
*Live Stock Co.* v. *Kansas, etc., R. R. Co.* (Mo.), 75 S. W.,
782; *So. Pac. Co.* v. *Phillipson* (Tex.), 39 S. W., 958; 6
Cyc., 401.   While this precise point was not involved, it falls

within the principle laid down in *Johnstone* v. *R. R. Co.*, 39 S. C., 55, 17 S. E., 512.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.