### STATE v. COOLER.

1. The fact that one of the petit jury had served on the grand jury that found the bill of indictment, furnishes a good ground of challenge to such juror ; but if he is sworn without objection, it is no ground for new trial, even though this ground of challenge was not known to the prisoner or his counsel, or could not have been discovered by due diligence, until after the jury was empanelled for the trial.

2. Under the act of 1887 (19 *Stat.*, 819), limiting the punishment for petit larceny to imprisonment in the county jail for not more than 30 days, or to a fine of not more than $100, trial justices have exclusive jurisdiction under the Constitution (art. I., § 19) of this offence, even where committed and indictment found before the passage of that act.

3. And that statute having diminished the punishment for petit larceny, one convicted after the statute of petit larceny committed before the statute, should be tried by a trial justice and sentenced to the punishment prescribed by the new law.

Before ALDRICH, J., Beaufort, February, 1888.

The opinion fully states the case.

*Mr. W. N. Heyward*, for appellant.

*Mr. Murphy*, solicitor, contra.

February 8, 1889.  The opinion of the court was delivered by

MR. JUSTICE McIVER.  The appellant was convicted in the Court of Sessions of petit larceny, alleged to have been committed on the 5th day of November, 1886, and was sentenced to imprisonment in the penitentiary, at hard labor, for the term of one year.  The prosecution was commenced on the 7th of June, 1887, and the true bill was found at September term, 1887, but the trial was had at February term, 1888, after the passage of the act of December 23, 1887 (19 *Stat.*, 819), amending the law in respect to the punishment of the offence of petit larceny, whereby it was declared that a person convicted of that offence should "be punished by imprisonment in the county jail for not more than thirty days, or by a fine of not more than one hundred dollars."

After verdict, and before sentence, the defendant moved to arrest the judgment upon these grounds: 1st. Because one of the jurors who rendered the verdict in this case was a member of the grand jury by which the bill was found; which fact was not known to defendant or his counsel until after the jury, charged with the trial of this case, had been empanelled.  2nd. Because, since the passage of the above cited act of 1887, the Court of Sessions had no jurisdiction of the case.  The motion in arrest of judgment having been overruled and sentence passed, as above stated, defendant appealed upon the grounds taken in arrest of judgment, and upon the further ground that the Circuit Judge erred in imposing a punishment in excess of that provided for by law.

The fact that one of the jurors who tried this case was also a member of the grand jury which found the bill, was made to appear by the affidavits of defendant and his counsel, as well as that of the juror in question; and it also appeared from the two first

affidavits, that this fact was not known to defendant or his counsel until after the jury were empanelled and the evidence had been taken. But it was not made to appear by affidavit or otherwise, that this fact could not have been discovered, by due diligence, in time to have enabled the defendant to challenge the juror for the cause stated. Waiving this, however, and assuming that the fact would not have been discovered by the use of due diligence, we do not think, under the authorities in this State, that the first ground can be sustained. There can be no doubt that the fact that a juror has served on the grand jury which found the bill, furnishes a good ground for challenge; but if the objection is not taken at the proper time, the accused may lose the benefit of it, as such an objection is not usually available on a motion for a new trial (1 *Bish. Crim. Proc.*, 1st edit., § 773), the general rule being universally recognized that that which was a cause of challenge to a juror shall not be made the ground for a new trial.

It is true, that in some of the cases elsewhere an exception to this rule has been recognized, and it has been held that where the fact constituting the cause of challenge is not known to the accused in time for him to exercise that right, and could not, by due diligence, have been discovered, especially where the objection goes to the moral capacity or impartiality of the juror, it may constitute a ground for a new trial. See an elaborate review of the cases in *Hollingsworth* v. *Duane*, Wall. Sen., 147. But an unbroken series of cases in this State, from the earliest period of our judicial history down to the present time, show that no such exception has ever been recognized here. *State* v. *Quarrell*, 2 Bay, 150; *State* v. *O'Driscoll, Ibid.*, 153, in which the very same ground which is here taken was presented, to wit, that one of the jurors who tried the case had served on the grand jury which found the bill, and it was overruled; *State* v. *Fisher*, 2 Nott. & McC., 261; *Billis* ads. *The State*, 2 McCord, 12; *Josey* v. *Railroad Company*, 12 Rich., 134, in which it was held that a cause of challenge. going to the impartiality of the juror, not known to the party until after verdict, furnished no ground for a new trial; *Boland* v. *Railroad Company*, 12 Rich., 368, in which it was held that the fact that a juryman had an interest in the

cause, which was not known to the party in time to challenge him, furnished no ground for a new trial; and finally, *Todd* v. *Gray*, 16 S. C., 635, in which the foregoing cases were recognized and followed.

The next question is that presented by the 2nd ground of appeal—whether the Court of Sessions could take jurisdiction of this case after the passage of the act of 1887, hereinabove cited. There can be no doubt that the very purpose of that act was to invest trial justices with jurisdiction of cases of petit larceny. This court had recently decided in *State* v. *Jenkins* (26 S. C., 121), that a trial justice had no jurisdiction of a case of petit larceny, because there was no law limiting the punishment of that offence to one hundred dollars fine or thirty days imprisonment, and the manifest object of the act in so limiting the punishment of that offence was to bring it within the class of cases covered by section 19, art. I., of the Constitution, which declares that "All offences less than felony, and in which the punishment does not exceed a fine of one hundred dollars, or imprisonment for thirty days, shall be tried summarily before a justice of the peace, or other officer authorized by law, on information under oath, without indictment or intervention of a grand jury," &c. Now, as it has been settled by the case of the *State* v. *Fillebrown* (2 S. C., 404), recognized in *State* v. *Jenkins, supra*, that a trial justice falls under the terms, "other officer authorized by law," as used in the clause of the constitution just quoted, and as the offence of petit larceny has heretofore, by section 2498 of the General Statutes, been declared a misdemeanor, which is an offence "less than felony," and as the punishment of the offence is now, by the act of 1887, limited to imprisonment in the county jail for not more than thirty days, or a fine not more than one hundred dollars, it follows, necessarily, that a trial justice now has jurisdiction of the offence of petit larceny.

But this is not conclusive of the present case, for two questions yet remain to be determined: 1st. Whether the jurisdiction thus conferred is exclusive, or concurrent only with the Court of Sessions. 2nd. Whether a trial justice can take jurisdiction of a case in which the offence was committed before such jurisdiction was conferred.

As to the first of these questions, we think it clear that the jurisdiction is exclusive. The terms in which the jurisdiction is conferred by the section of the constitution, indicate that such was the intention of the framers of that instrument, and such would be the natural interpretation put upon the language used by the people who ratified it. "*Shall* be tried *summarily,* * * without indictment or intervention of a grand jury,*" it seems to us, necessarily excludes the idea that such cases could be tried in the Court of Sessions. But we need not pursue the argument, as we think the question has been conclusively determined by adjudications of this court. In *State* v. *McKettrick* (14 S. C., 346), it was held that trial justices have exclusive jurisdiction of assaults and batteries which are not of a high and aggravated nature, and now since the punishment of petit larceny has been reduced to the limits prescribed in the above quoted clause of the constitution, it is impossible to draw a distinction between that case and this, so far as the question of jurisdiction is concerned; for the decision in that case rested upon the ground that the offence of assault and battery was a misdemeanor, the punishment of which had been reduced to the limits mentioned in the 19th section of the 1st article of the Constitution. So, also, in *State* v. *Harper* (6 S. C., 464), it had been held that any offence falling within the terms of that section of the constitution was exclusively within the jurisdiction of a trial justice, and that case was overruled by the case of *State* v. *Williams* (13 S. C., 546) solely because the punishment of petit larceny had not then been limited to a fine of one hundred dollars or imprisonment for thirty days. Hence, as is said by Simpson, C. J., in *State* v. *Jenkins, supra:* "If the general assembly had since limited the punishment of petit larceny, as mentioned in art. I., section 19, this, under the language of the section, would have conferred exclusive jurisdiction upon trial justices." It is clear, then, that trial justices have, since the act of 1887, exclusive jurisdiction of cases of petit larceny.

It is argued, however, that if this be so, then the result would be that all those who may have committed the offence of petit larceny prior to the passage of the act of 1887, would escape punishment altogether; for if the Court of Sessions, which formerly had

exclusive jurisdiction of such offence, has been deprived of it by
the new law, that court could not now try such a case, and it
could not be tried under the new law, as that would be in viola-
tion of the *ex post facto* clause of the constitution; and it is there-
fore contended that the act of 1887 must be construed as apply-
ing only to offences committed after its passage, in order to avoid
such a result. But to place such a construction upon the act of
1887, would involve the necessity of interpolating words into that
act which the general assembly has not seen fit to use; and this
the courts of this State have, in at least two notable instances,
declined to do, as may be seen by reference to the cases of *The
State* v. *Taylor* (2 McCord, at page 492) and *State* v. *Thomas*
(14 Rich., 163), where the very result now apprehended actually
occurred, by reason of an alteration of the law in reference to the
offence of horse stealing in the one case and in reference to cow
stealing in the other, in neither of which cases, just as in this,
was there any provision in the new statute confining its operation
to offences committed after the passage of such acts.

Even, therefore, if the consequences apprehended should fol-
low from the effect which we think must be given to the act of
1887, of depriving the Court of Sessions of jurisdiction in a case
like this, and conferring it upon a trial justice, this would not
warrant the court in supplying what is supposed to be an omis-
sion in the act. But we are not prepared to admit that the trans-
fer of jurisdiction from one court to another is such an *ex post
facto* law as would, under the constitution, forbid the new tri-
bunal from taking jurisdiction in a case where the offence charged
was committed prior to the transfer of jurisdiction. The contrary
has been held in this State in the case of *The State* v. *Sullivan*
(14 Rich., at page 286), where it is said: "It has been expressly
held that a statute creating a new court, or conferring a new
jurisdiction, or enlarging or diminishing the powers of an exist-
ing court, is not an *ex post facto* law," citing *Wales* v. *Belcher*,
3 Pick., 508, and *Commonwealth* v. *Phillips*, 11 Pick., 28. See,
also, *Ewing's Case*, 5 Gratt., 701. We need not, therefore, enter
into any discussion of the true meaning of the phrase, *ex post
facto*, as used in the constitution, or undertake to show in what
cases it applies.

Finally, it is urged that the punishment prescribed by the act of 1887 cannot be imposed for an offence committed prior to its passage. Here, too, we are relieved from the necessity of discussing the question, as the point has been distinctly adjudicated by a decision in our own State. In the case of *The State* v. *Williams* (2 Rich., 418), it was held, that where, after a conviction of forgery and pending an appeal, the general assembly passed an act reducing the punishment of that offence from death to fine, imprisonment, and whipping, the punishment prescribed by the new act must be imposed, as the accused could not be punished under the law as it stood at the time the offence was committed. It is quite clear, therefore, that the third ground of appeal is well taken, as the Circuit Judge erred in imposing the punishment of imprisonment in the penitentiary at hard labor for the term of one year. What might have been the effect if the act of 1887 had prescribed a punishment different in kind or increased in degree from that prescribed by the old law, we need not now consider, as the new law makes no alteration in kind, and diminishes the degree of punishment.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court, with instructions to remand the same to a trial justice for trial.