585 S.E.2d 303

**STATE, Respondent,**

v.

**Linda TAYLOR, Petitioner.**

**No. 25694.**

Supreme Court of South Carolina.

Heard June 25, 2003.

Decided Aug. 11, 2003.

L. Scott Harvin, of Hetrick Law Firm, of Walterboro, for petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles W. Richardson and Senior Assistant Attorney General Norman Mark Rapoport, of Columbia; and Solicitor Randolph Murdaugh, III, of Hampton, for respondent.

Justice MOORE:

We granted a writ of certiorari to review the Court of Appeals' decision [1] affirming petitioner Linda Taylor's conviction on two counts of issuing a fictitious driver's license. We affirm in result.

## FACTS

Taylor was charged with violating S.C.Code Ann. § 56–1–515(1) (1991) which provides:

It is unlawful for any person to alter a motor vehicle driver's license so as to provide false information on the license or to sell *or issue a fictitious driver's license.*

(emphasis added). At trial, the State presented evidence that on April 24, 1998, Taylor was working as a manager at the Walterboro Division of Motor Vehicles (DMV) when she processed driver's licenses for two illegal Mexican immigrants without requiring any identification, written exams, or driving tests.

Lilia Macias testified she made arrangements with one Maria Cortez who agreed to take Macias to the DMV and ensure she received a driver's license without the necessary documentation in exchange for $1,000. Macias received her license as promised after giving only her name and birthdate, taking a vision test, and paying the $12.50 application fee. Macias identified Taylor as the person who processed her license. Armando Ramirez testified to receiving a license in the same manner from Taylor on the same day. Neither one ever paid Cortez and there is no evidence Taylor received any money for her part in processing the licenses.

After the State's case, Taylor moved for a directed verdict. The trial judge denied the motion. The jury then returned a

---

1. 348 S.C. 152, 558 S.E.2d 917 (Ct.App.2001).

guilty verdict on both counts. On post-trial motion for a verdict in arrest of judgment, Taylor reargued the substance of her directed verdict motion. The trial judge granted the motion and entered a verdict of acquittal.

On appeal by the State,[2] the Court of Appeals found it was inappropriate procedurally for the trial judge to grant Taylor's motion for a verdict in arrest of judgment based on the sufficiency of the evidence; moreover, the evidence was sufficient to support a charge of issuing a fictitious license. The Court of Appeals reversed and reinstated Taylor's convictions.

## ISSUE

Was a verdict in arrest of judgment properly granted on these facts?

## DISCUSSION

Taylor contends the Court of Appeals should not have reversed based on the procedural inappropriateness of a verdict in arrest of judgment because the State never argued this defect below. We agree.

It is well-settled that a verdict in arrest of judgment should not be granted based on the insufficiency of the evidence; the proper remedy is a new trial. *State v. Dasher*, 278 S.C. 395, 297 S.E.2d 414 (1982); *State v. Syphrett*, 27 S.C. 29, 2 S.E. 624 (1887); *State v. Hamilton*, 17 S.C. 462 (1882). Because the State never argued this procedural bar to the trial court, the issue was not preserved for appeal and the Court of Appeals should not have reversed on this ground. We find, however, that the Court of Appeals properly reversed the verdict of acquittal based on the sufficiency of the evidence.[3]

---

**2.** Although the State may not appeal a directed verdict of acquittal, *State v. McKnight*, 353 S.C. 238, 577 S.E.2d 456 (2003), it may appeal a verdict of acquittal in arrest of judgment. *State v. Dasher, infra.* In such a case, the defendant is not subjected to double jeopardy because the jury's original conviction is merely reinstated. *Id.*

**3.** Because the trial court essentially granted a belated directed verdict, on review we apply the standard applicable to a directed verdict *i.e.*, whether there was evidence sufficient to submit the charge to the jury. *See State v. McGowan*, 347 S.C. 618, 557 S.E.2d 657 (2001).

Taylor concedes she processed the two driver's licenses without requiring the necessary documentation or tests. Her argument is that although she *processed* the licenses, the DMV *issued* them, and therefore they are not "fictitious licenses" as a matter of law. Taylor contends § 56–1–515(1) should apply only to licenses manufactured by others outside the DMV.

First, although the license is issued under the authority of the DMV, the license is physically "issued" by the employee who processes the application. The employee's actions therefore are fairly encompassed within the statutory term "issue."

Further, a license issued by an employee of DMV may still be "fictitious." South Carolina Code Ann. § 56–19–50 (1991) provides:

> **§ 56–19–50. Department shall seize expired, fictitious and certain other certificates, cards, permits, licenses, and plates.[4]**
>
> The Department may take possession of any ... license ... *issued by it* (a) upon expiration, revocation, cancellation or suspension thereof, (b) *which is fictitious or (c) which has been unlawfully or erroneously issued.*

(emphasis added). Under this section, a license issued by DMV may be "fictitious."

We construe § 56–1–515(1) to require that the issuance of a "fictitious" license is unlawful if knowingly done. *See State v. Ferguson*, 302 S.C. 269, 395 S.E.2d 182 (1990) (unless otherwise indicated, prohibited act must be accompanied by criminal intent); *State v. Rothschild*, 351 S.C. 238, 569 S.E.2d 346 (2002) (construing statute to include an element of intent to avoid vagueness). Accordingly, a DMV employee who processes a driver's license based on information she knew or should have known was fictitious is guilty under § 56–1–515(1) for issuing a fictitious license.

---

4. Although this section is found in Chapter 19 of Title 56 which is entitled "Protection of Titles to Interests in Motor Vehicles," some of the provisions in this chapter have broad application. *See, e.g.,* § 56–19–40 ("Department shall examine and determine the genuineness, regularity and legality of every application for registration of a vehicle or for a certificate of title therefor *and of any other application lawfully made to the Department* ....") (emphasis added).

Here, the fact that Taylor never demanded any documentation from Macias or Ramirez is evidence she knew or should have known the information she used to process the licenses was fictitious. Further, there is evidence neither applicant gave a social security number although the computer would not complete the application process without one, indicating Taylor fabricated social security numbers for the two applicants. Neither applicant gave Taylor an address and neither lived at the address on the license, again indicating Taylor fabricated the information. This evidence was sufficient to support Taylor's convictions under § 56–1–515(1).

We find the Court of Appeals correctly ruled that the trial judge improperly entered a verdict of acquittal based on the sufficiency of the evidence.

**AFFIRMED IN RESULT.**

TOAL, C.J., WALLER, BURNETT and PLEICONES, JJ., concur.